UNITED STATES of America, Plaintiff,

v.

Percy KING, Defendant.

No. 94–10115–01.

United States District Court,
D. Kansas.

Jan. 10, 1996.

Randall K. Rathbun, Office of U.S. Atty., Wichita, KS, for U.S.

Gary C. Hagan, Hutchinson, KS, Jonathan B. Phelps, Phelps Chartered, Topeka, KS, for defendant.

## MEMORANDUM AND ORDER

WESLEY E. BROWN, Senior District Judge.

This matter is before the court on the defendant's objections to the Presentence Report. On October 5, 1995, the defendant entered a plea of guilty to Counts 1, 2 and 3 of a four-count indictment. Counts 1 and 2 charged the defendant with knowing operation of a source that discharged a pollutant in

violation of 33 U.S.C. § 1319(c)(2)(A). Count 3 charged the defendant with knowingly introducing a pollutant into a publicly owned treatment works in violation of 33 U.S.C. § 1319(c)(2)(B). A Presentence Report has been prepared and disclosed to the parties. The defendant has filed objections to the report. A sentencing hearing was held on January 8, 1996, at which time the defendant presented testimony relating to one of the objections. The court made oral findings on the objections at the time of the hearing and imposed sentence on the defendant. This written order will supplement the court's oral rulings.

The history of the case is extensive. The defendant initially entered a guilty plea on February 10, 1995. A Presentence Report was prepared at that time and objections were filed. Shortly before the date set for sentencing, the defendant moved to withdraw his plea. The court granted that motion and the case proceeded to a jury trial. After three days of trial (at the close of the government's case) the defendant again decided to plead guilty, and on October 5, 1995, the court accepted his plea to counts 1, 2 and 3.

*Defendant's Objections—First Addendum.* The first addendum to the Presentence Report contains objections that were filed by defendant prior to the withdrawal of his first plea. Although were filed after the second plea that appeared to supersede the first set, defendant indicated at the sentencing hearing that he intended to reassert the first set as well. The court therefore made the following findings with respect to the first set of objections.

■ *Objection # 1:* The defendant argues that the penalties in the report "had not been agreed to before," an apparent reference to the fact that the guideline calculation in the Presentence Report differs from the penalty recommended by the United States in the plea agreement. As the court explained to the defendant when he defendant entered his plea, the sentence is solely a matter within the control of the judge and the court is not bound by recommendations made by the United States. The objection is therefore overruled.

■ *Objection # 2:* Defendant objects because the report contains allegations as to which no charges were filed. This objection is overruled on the grounds that the court is not limited to the allegations of the indictment in determining the appropriate sentence. *See* USSG § 1B1.3.

■ *Objection # 3:* Defendant objects to the report's discussion of the time the incident occurred. The court overrules the objection because the specific time of the incident has no effect on the sentence.

*Objection # 4:* Similarly, defendant's objection concerning the time it takes for material to move from the truck wash to the Park City system is overruled on the grounds that any such dispute has no effect on the sentence.

■ *Objection # 5:* The defendant asserted that there was no evidence to support the conclusion that fumes from the discharge caused adverse health effects. This objection is overruled on the grounds that the government presented persuasive evidence of adverse health effects suffered by several individuals who were exposed to the fumes.

■ *Objection # 6 and 7:* Defendant objects to allegations of obstruction of justice in the Presentence Report because those allegations were the subject of a dismissed count. The court overrules the objection because such relevant conduct may be considered in determining the sentence. *See* USSG § 1B1.3. (Defendant responsible for all acts committed in the course of attempting to avoid detection or responsibility for the offense.)

*Objection # 8:* Defendant objects to the report's conclusion that he did not accept responsibility for the offense. As is discussed more fully herein, the court finds that the defendant did not accept responsibility.

*Objection # 9:* The court's ruling is the same as # 6, supra.

*Objection # 10:* Defendant's objection to the adjusted offense level is overruled based on the court's prior rulings.

*Objection # 11:* The court's ruling in the same as # 8, supra.

*Objections # 12, 13, 14:* Defendant's objections to inferences arising from the language of the Presentence Report are overruled because the disputed language will not affect the sentence.

*Objection # 15:* This objection is overruled because the court is not bound by recommendations made in the plea agreement.

*Objection # 16:* The court will construe this objection as a request for a downward departure. A departure is warranted only if "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." USSG § 5K2.0. The defendant has identified no circumstances not adequately considered by the Sentencing Commission.

----

*Defendant's Objections—Third Addendum.* The defendant filed ten additional objections after his second plea; these objections are found in the Presentence Report's third addendum.

**Objection No. 1:** Defendant objects to ¶ 18 of the report, which asserts that he has not accepted responsibility for the offense conduct and is not entitled to any reduction under § 3E1.1. Defendant argues that he demonstrated acceptance of responsibility at the plea hearing on October 5, 1995, both in writing and in oral statements.

■ The court concludes that the defendant has not clearly demonstrated acceptance of responsibility for his offense. In so finding, the court has considered all relevant factors, including those listed in Application Note 1 of § 3E1.1. Subsection 1(h) of that note makes clear that the timeliness of the defendant's conduct in manifesting acceptance of responsibility is a relevant factor. The defendant did not act in a timely manner in this case. He denied the essential factual elements of guilt and required the government to prepare for and present its case to a jury. Only after the presentation of the government's case did the defendant admit the elements of the offenses. This belated

admission resulted in a substantial waste of judicial resources.

The defendant's statements at the sentencing hearing also show that he has not accepted responsibility. Defendant complained at the sentencing hearing that he had been promised "no jail time" by the government and he suggested that he only pled guilty to take advantage of that promise. That assertion is flatly inconsistent with the defendant's statements under oath at the second plea hearing. The defendant understood perfectly well when he entered his plea that the sentence he would receive was solely up to the court and that the court was not bound by the government's recommendations. The court is also unimpressed by defense counsel's argument at the sentencing hearing to the effect that there was no showing that the defendant committed these acts intentionally and that by pleading guilty the defendant was admitting responsibility for his employees' actions. After hearing all of the government's evidence at trial, the defendant stood before the court at the plea hearing and admitted his guilt on counts 1, 2 and 3. That was an admission of all the allegations in the indictment, including that the defendant himself caused or aided an abetted others in the discharge of a pollutant into the POTW. The court rejects as inconsistent with the defendant's knowing and voluntary admissions at the plea hearing any suggestion that he did not knowingly cause the introduction of this substance into the POTW or that he did not aid and abet others in doing so. Under the circumstances, a reduction for acceptance of responsibility is not warranted.

■ **Objection No. 2:** Defendant next objects to the base offense level set forth in ¶ 20. He argues that the base offense level for mishandling of pollutants, § 2Q1.3, should be applied instead of the one for mishandling of hazardous or toxic substances, § 2Q1.2. (This would result in a 2 level reduction in offense level.) At the sentencing hearing, the defendant presented expert testimony from Morgan Padgett, PhD, who testified that in his opinion the amount of methyl acrylate discharged from the defendant's truck wash into the sewer system on August 30, 1994, did not pose an explosion or health

hazard.[1] In response, the government elicited testimony from Dr. Padgett conceding that methyl acrylate is classified as a hazardous substance.

Section 2Q1.2 of the guidelines applies to offenses involving substances that are designated toxic or hazardous by statute or regulation. USSG § 2Q1.2, comment (n.3). Methyl acrylate is designated as a hazardous or toxic substance by several federal regulations, including 49 CFR § 172.101 (transportation of hazardous materials), 40 CFR § 372.65 (CERCLA regulation of toxic chemicals), and 40 CFR Part 63, Subpart F (hazardous air pollutants). Thus, § 2Q1.2 appears to be the more appropriate section. Under the enhancement in § 2Q1.2(b)(1)(B) for discharge of such a substance, however, the court has the authority to depart two levels in either direction to take account of the degree of harm resulting from the discharge, the quantity and nature of the substance, and the duration of the offense and the risk associated with the violation. USSG § 2Q1.2, comment (n.5).

■ The court heard extensive evidence at trial of the circumstances surrounding the offense. Based on all of the evidence, including Dr. Padgett's testimony at the sentencing hearing, the court concludes that a 2 level reduction is warranted under § 2Q1.2(b)(1)(B). This is due to several factors. First, the harm resulting from the discharge was relatively minor. A prompt response to the discharge by Park City Officials prevented any serious damage to the Park City treatment plant and no individuals

suffered any lasting adverse health effects from the discharge. Second, the amount of methyl acrylate discharged, even according the government's estimates, was not vast. And finally, as contrasted with an offense involving a continuing course of conduct over an extended period of time, the duration of the offense in this case appears to have been very short. Of course these factors do not excuse the defendant's conduct, but they do warrant a downward adjustment based on the relative scope of the discharge.

---

3. *Objection No. 3:* Defendant objects to ¶ 22 of the report, which states that the offense "involved a disruption of a public utility, to an extent." Defendant contends that there was no disruption because Park City officials were able to by-pass the treatment facility and divert the effluent to holding ponds.

The Presentence Report states that the disruption was not significant enough to warrant any enhancement in offense level. In light of this recommendation, which the court accepts, no finding is necessary as to whether the discharge resulted in "disruption" of the POTW because that issue will not affect the sentence. *See* Fed.R.Crim.P. 32(c)(1).

---

4. *Objection No. 4:* Defendant objects to ¶ 25, which adds a two level increase for obstruction of justice. The Presentence Report alleges that the defendant attempted to

1. Dr. Padgett opined that the methyl acrylate discharged into the Park City POTW was not in a quantity sufficient to create a fire or explosion hazard or to cause acute worker health and safety problems. He thus suggested that the evidence did not support counts 1 and 2 of the indictment. The court rejects this conclusion for several reasons. First of all, the government presented evidence at trial, including its own test results, to support the allegations in the indictment. The defendant had the opportunity to challenge that evidence at trial and to have the jury determine whether the government met its burden of proof. The defendant waived that opportunity and decided to plead guilty, however, thereby admitting all of the allegations in the indictment. Secondly, Dr. Padgett's brief testimony was not sufficient to persuade the court that the government's test methods were faulty or that its test results were unreliable. The government presented evidence at trial that samples of waste water discharged from the truck wash had a flash point that made it a fire or explosion hazard (*see* Govt. Exh. 37) and contained methyl acrylate in a quantity that had the potential to cause acute worker health and safety standards (*see* Govt. Exh. 41). The court accepts the governments tests as valid. Finally, the conclusions in Dr. Padgett's report are based on an assumption that only 1–3 gallons of methyl acrylate was in the tanker to begin with. Def.Exh. A at 2. That assumption was in turn based in part on Dr. Padgett's belief that a purchaser would have an economic incentive to empty the tanker completely upon delivery. The court concludes that such an assumption as to the amount of material initially in the tanker is speculative and unreliable.

have an employee lie on his behalf and take responsibility for the offense and that he made false statements to the Probation Officer. The defendant denies these allegations.

■ The court finds that the two level increase for obstruction of justice should be applied here. Such an adjustment is appropriate if the defendant willfully attempted to obstruct or impede the administration of justice during the investigation of the offense. USSG § 3C1.1. Attempting to suborn perjury is sufficient to warrant an increase under this section. *Id.,* comment (n.3). Based on the evidence presented at trial, the court finds that the defendant willfully attempted to persuade Manuel Ortega to give investigators a false account of how the discharge occurred. At trial the government introduced a tape recording of an October 28, 1994, conversation in which the defendant urged Manuel Ortega to say that Ortega had accidently opened the tank of the truck and let out 20 gallons of material and that he closed the tank up as soon as he discovered it contained flammable material. The evidence presented at trial clearly refuted this account of how the discharge occurred. The evidence showed that Mr. King supervised the washing out of the tanker after he arrived at the truck wash. The defendant's statements during this October 28th conversation leave no doubt that he was attempting to get Ortega to testify falsely. He repeatedly urged Ortega to "stick with [the] story." When Ortega asserted that it did not happen that way, the defendant responded, "No, man, I'm telling you man that's what you gotta say," and warned Ortega that "me and you can get fined ... if you don't say that." He then promised Ortega a job, telling him "That's all you say, stick with that story and don't say nothing different. Just say the same thing and then you'll be back to work with me...." Govt. Exh. 39A. The evidence supports the increase for obstruction of justice.

---

**5, 6, 9.** ***Objections 5, 6 and 9.*** Objections 5, 6 and 9 concern the appropriate offense level and are based on the defendant's previous objections.

Based on the foregoing rulings, the court finds that the appropriate adjusted offense level is 12. The defendant has a criminal history category of I, resulting in a guideline range of 10–16 months imprisonment.

For the reasons expressed at the sentencing hearing, the court determined that a sentence of imprisonment of 10 months was appropriate. The court recommends placement in a halfway house under a community corrections component. The defendant may be moved to a pre-release component at the direction and discretion of the halfway house director. Additionally, in accordance with the guidelines, the court imposed a total fine of $15,000 ($5,000 on each count), a term of supervised release of one year on each count to run concurrently (together with special conditions of release), restitution in the amount of $2,559, and a special assessment of $150.

---

**7, 8.** ***Objections 7 and 8.*** Defendant objects to ¶ 135, which asserts that the court gave the defendant ten days after the second plea was entered to submit objections to the Presentence Report. He also objects to ¶ 136, which states that a letter submitted by counsel was inaccurate and erroneous.

The court concludes that no finding on these controverted matters is necessary because they will not affect the sentence. The court is satisfied that an appropriate investigation was made by the Probation Officer in this case and that the defendant has had ample opportunity to submit objections to the Presentence Report. No further findings are necessary.

***Miscellaneous Objections.*** The government has asserted that defendant's objections were filed out of time and should not be considered by the court. The court can consider objections raised any time before imposing sentence for good cause shown. Fed. R.Crim.P. 32(b)(6)(D). The court concludes that in the interests of justice the merits of defendant's objections should be addressed.

■ At the conclusion of the sentencing hearing, the government requested that as part of the sentence the court adopt that portion of the plea agreement requiring the

defendant to divest himself of ownership in King's Truck Wash, Inc. The court declined to do so because the defendant's ability to pay fines and restitution as determined in the Presentence Report was not based on such a condition.

**CONCLUSION:** The foregoing findings shall be incorporated into the Presentence Report. The court finds that the Presentence Report, except as modified by this order, is accurate and the court hereby adopts it.

IT IS SO ORDERED.